
UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| GENE E. DUDLEY, | ) | Civ. 09-4024-LLP |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | ORDER GRANTING PARTIAL |
| vs. | ) | MOTION TO DISMISS FOR LACK |
|  | ) | OF SUBJECT MATTER |
| UNITED STATES OF AMERICA, | ) | JURISDICTION |
|  | ) |  |
| Defendant. | ) |  |

Plaintiff, Gene. E. Dudley filed the instant action against the United States under the

Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346. Dudley was incarcerated at the Federal

Prison Camp (FPC) in Yankton, South Dakota at the time relevant to this action. Dudley was

injured in an inmate softball game. He argues the United States is liable for failing to obtain

prompt medical treatment, for improperly transporting him, for failing to have adequate

medical facilities and staffing at the prison camp, and for refusing to allow him to use a

heating pad and handicap access ramp after his surgery. The United States moves to dismiss

portions of Dudley's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil

Procedure. The United States argues that this court lacks jurisdiction over Dudley's claims

regarding his transportation to his quarters, his access to a handicap ramp and heating pad,

and his claims that FPC Yankton did not have an adequate medical facility or staffing.

Dudley also seeks the appointment of counsel to represent him in this matter.

## FACTUAL BACKGROUND

Dudley was injured during an inmate softball game on May 27, 2007. Dudley asserts

that the Recreation Officer supervising the game forced him to lie on the softball field in

pain, for nearly 1 hour after his injury. Docket 1, Complaint, ¶ 9.a. During this time, the Lieutenant contacted an on call Physician Assistant (PA), who allegedly authorized her to administer medication and transport Dudley to his assigned quarters for bed rest. *Id.* at ¶ 9.b. Dudley alleges inmates picked him up, transferred him to a golf cart, and then, when he reached his quarters, carried him up three flights of stairs. *Id.* at ¶¶ 9.a, 9.d. The PA eventually came to the institution and concluded that Dudley needed to be transported via ambulance to the local hospital for x-rays, which revealed an acetabular fracture.[1] *Id.* at ¶ 9.c. The Bureau of Prisons transferred Dudley to a medical center for surgery, and after he was discharged from his treatment, he returned to FPC Yankton. *Id.* at ¶ 10. Upon his return, the Clinical Director and Health Services Administrator allegedly denied him access to the handicap ramp entrance to the Health Services Department and instructed him to use the main entrance, which meant he had to use his walker on slick stairs with no hand rails. *Id.* at ¶ 10.a. Dudley further alleges he was denied access to a heating pad, which had been prescribed by a consulting doctor. *Id.* at ¶ 10.a.

Dudley claims FPC Yankton failed to comply with 18 U.S.C. §§ 4013 and 4042 and Bureau of Prisons' Program Statement 6031, Patient Care, all of which entitle him to adequate medical care, *see id.* at ¶ 7, and "safekeeping in housing and from acts or omissions

---

[1]An acetabular fracture is a fracture of the acetabulum, or the "cup-shaped depression on the external surface of the hip bone, with which the head of the femur articulates." Stedman's Medical Dictionary 11 (26th ed. 1995)

by federal officials whether intented [sic] or not while acting in their official and/or individual capacities." *Id.*, ¶ 8.[2]

Dudley's first claim centers around the promptness and manner of the response to his injury. He argues that he should not have laid on the field for as long as he did and that the PA should have returned to the prison rather than evaluate him over the phone. *Id.* at ¶¶ 9.a, 9.c. He also asserts that an ambulance should have been called immediately, rather than after the PA arrived. *Id.* at ¶ 10.b. Dudley further claims the staff violated policy when they moved him from the softball field to his quarters because policy required the Recreation Officer and Lieutenant to use a gurney or stretcher to move him, rather than use inmates to carry him. *Id.* at ¶ 9.a.

Second, Dudley finds fault with the medical facilities available at FPC Yankton. He alleges the institution should have an adequate medical facility for housing inmates with emergency medical needs, and since the facilities were inadequate, he was forced to rely on the assistance of other inmates in his housing unit before he was sent to the hospital by the PA. *Id.* at ¶¶ 9.e, 10.c. He also claims that following his return to the prison camp, there were no electrical outlets for him to use a heating pad, which had been prescribed by a consulting doctor. *Id.* at ¶ 10.a . Finally, Dudley argues that FPC Yankton staff improperly denied him permission to use a handicap ramp to access the medical department's facilities. *Id.*

---

[2] Title 18, Section 4013 applies to federal inmates being detained in non-federal institutions and does not apply to Dudley as his injury occurred at a federal institution. *See* 18 U.S.C. § 4013. Title 18, Section 4042 sets forth the duties of the Bureau of Prisons and the notice it must give upon the release of certain inmates. *See* 18 U.S.C. § 4042. Bureau of Prisons' Program Statement 6031.01, Patient Care, addresses the provision of medical care to the inmate population, including how Health Services Departments are to be structured and what services will be provided. *See* generally Declaration of Diane Latimer, Exhibit B.

According to Dudley, FPC Yankton's actions caused him to suffer severe pain from a broken hip and fractured pelvis immediately after his injury, *Id. at* ¶¶ 9.b, 9.e., 10.b., and lingering stiffness and "harmful affects" in his hip joint. *Id.* at ¶ 10.a.

## STANDARD OF REVIEW

Jurisdiction is a threshold question that should be decided at the outset of litigation. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). "Plaintiffs have the burden of establishing that jurisdiction exists." *Sisseton-Wahpeton Oyate v. U.S. Dep't of State*, 659 F. Supp. 2d 1071, 1077. Because a 12(b)(1) motion challenges the court's power to hear the case, "the trial court is free to weigh the evidence and satisfy itself as to its power to hear the case." *Osborn*, 918 F.2d at 730. Therefore, the court may consider facts beyond the allegations of the complaint without converting the 12(b)(1) motion to a motion for summary judgment. *Id.*; *Deuser v. Vecera*, 139 F.3d 1190, 1192 n.3 (8th Cir. 1998).

## DISCUSSION

The FTCA generally waives the sovereign immunity of the United States for certain torts committed by government employees. The FTCA allows suits against the United States for "personal injury to death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant." 28 U.S.C. § 1346(b)(1). "Sovereign immunity is a jurisdictional doctrine and the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *Brown v. United States*, 151 F.3d 800, 804 (8th Cir. 1998). But the FTCA's waiver of sovereign immunity is limited by several exceptions. The scope of a

waiver of sovereign immunity is also a jurisdictional question. *Id.* Thus, a "case falling within

the discretionary function exception lacks subject matter jurisdiction." *Jurzec v. American*

*Motors Corp.*, 856 F.2d 1116, 1118 (8th Cir. 1988).

**I.      The Discretionary Function Exception to the FTCA**

The discretionary function exception seeks to protect government policymaking by

insulating some government decisions from the FTCA's waiver of sovereign immunity.

*Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791, 795 (8th Cir. 1998). The United States may

not be sued under the FTCA for "any claim . . . based upon the exercise or performance or the

failure to exercise or perform a discretionary function or duty on the part of a federal agency

or an employee of the Government, whether or not the discretion involved be abused." 28

U.S.C. § 2680(a).

There is a two-part test for whether the discretionary function exception applies.

*Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). First, the government

must establish that the employee's action involved an element of judgment or choice. *Demery*

*v. U.S. Dep't of the Interior*, 357 F.3d 830, 832 (8th Cir. 2004). If a mandatory statute or

regulation controls the employee's conduct, the conduct did not involve judgment or choice

and is therefore, not sheltered from liability by the discretionary function exception. *Hinsley*

*v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 672 (8th Cir. 2008). But, if no

mandate exists, the action is considered a product of judgment or choice and the first portion

of the test is satisfied. *Id.* The second prong of the test examines whether the choice was

grounded in social, economic, or political policy. *Dykstra*, 140 F.3d at 795. The individual

government employee need not have actually consciously considered any policy factors. "The

judgment or decision need only be susceptible to policy analysis, regardless of whether

social, economic, or political policy was ever actually taken into account, for the exception to

be triggered." *Demery*, 357 F.3d at 833. The focus of the second part of the test is "not on the

agent's subjective intent in exercising the discretion . . . but on the nature of the actions taken

and on whether they are susceptible to policy analysis." *United States v. Gaubert*, 499 U.S.

315, 325 (1991).

A.    **Inadequate Medical Facilities Claim**

Dudley claims that the medical facilities at FPC Yankton are inadequate because they

do not have facilities for housing inmates with emergency medical needs. Docket 1, ¶ ¶ 9.c,

9.e, 10.c. The United States argues that the Bureau of Prisons' classification of inmates and

institutions is protected by the discretionary function exemption.

First, the court will examine whether the medical classification of inmates and

institutions is a discretionary decision. No federal regulation or statute mandates the manner

of medical classification of federal inmates and institutions. Rather, Bureau of Prisons

administrators exercise their judgment, classifying inmates according to their medical needs

and institutions according to the type of healthcare resources available. *See* Docket 43,

Declaration of Diane Latimer, ¶ 4; Docket 43-3, Medical Classification- Care Level Criteria.

*See also Hewitt v. Helms*, 459 U.S. 460, 467 (1983)("Prison officials have broad

administrative and discretionary authority over the institutions they manage . . ."), *overruled*

*on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995), The Federal Prison Camp at

Yankton is classified as a Care Level 1 institution and does not have medical staff on site 24

hours a day. Because of that designation, the institution houses inmates who are generally

6

healthy and need limited medical evaluation and monitoring. *Id.* Medical staff at Care Level 1

institutions are not present 24 hours a day, but FPC Yankton has implemented procedures for

after hours medical attention. See Docket 43-2. The determination that a Care Level 1 facility

does not require 24 hour medical staffing was a product of prison administrators' judgment.

Accordingly, the first prong of the discretionary function test is satisfied.

Next, the medical classification must be grounded in economic or policy

considerations to be protected by the discretionary function exception to the FTCA. *Gaubert*,

499 U.S. at 325. The decision to classify inmates by medical needs and to designate FPC

Yankton as a Care Level 1 facility necessarily involved both economic and policy

considerations. Thus, the second prong of the test is satisfied and the decision falls within the

discretionary function exception to the FTCA. *See Janis v. United States*, 2009 WL 564207,

No. 1:06-cv-1213 at *14 (S.D. Ind. Mar. 4, 2009) ("A prison's medical designation is a

discretionary decision based on social policy and budgetary considerations related to the

discretionary decision of where to house and designate inmates within the federal prison

system."); *Gottlieb v. United States*, 624 F. Supp. 2d 1011, 1024 (S.D. Ind. 2008) (holding

that the discretionary function exception applied to federal prison policy that contracted with

a local hospital to treat medical emergencies that occurred after hours); *Branch v. United*

*States*, 2006 WL 1770995, No. 2:05cv423 at *4 (E.D. Va. June 22, 2006) (finding that the

discretionary function exception to the FTCA applied to a federal prison's decision not to

maintain 24 hour medical staffing). *See also Cohen v. United States*, 151 F.3d 1338, 1344

(11th Cir. 1998) ("Deciding how to classify prisoners and choosing the institution in which to

place them are part and parcel of the inherently policy-laden endeavor of maintaining order

and preserving security within our nation's prisons."). Accordingly, this court lacks jurisdiction over Dudley's claim that the medical facilities at FPC Yankton are inadequate.

## B.    Decision To Move Dudley without a Stretcher

Dudley also claims that he was improperly moved from the softball diamond following his injury. He claims that prison staff were required by policy to use a stretcher to move him. Docket 1, ¶ ¶ 9.a, 9.d. But FPC Yankton's policies do not mandate a particular method of transporting an injured inmate. Rather, "[a] motorized emergency cart with the capability of carrying a stretcher is available for use by Health Services Staff in the event of an emergency." Docket 43-2, Institutional Supplement, at 9. Because there was no mandatory policy requiring that Dudley be moved in a particular fashion, the decisions regarding his transport from the softball field were a product of judgment or discretion. *See Dykstra*, 140 F.3d at 795. Thus, the first prong of the discretionary function test is satisfied.

Next, the court considers whether decisions about moving Dudley to his quarters were grounded in considerations of public policy. The United States correctly asserts that the Lieutenant and Recreation Officer had to assess what resources were available to them, including available equipment and staff. FPC Yankton is a prison camp with limited staff available to respond to an incident after normal working hours. If prison staff were used to move Dudley, they would be required to abandon their area of the prison, leaving it and the inmates in that area unsupervised. These are social and economic policy concerns. Thus, the decision was susceptible to policy analysis. *See Gaubert*, 499 U.S. at 325. Moreover, the FPC Yankton policy regarding use of the motorized emergency cart allows prison personnel to exercise discretion in determining whether the emergency necessitates use of the cart or a

8

stretcher. When a governmental policy permits a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. *Demery*, 357 F.3d at 833. Accordingly, the discretionary function exception to the FTCA shields the United States from liability on Dudley's claim that he was improperly moved. *See Kiehn v. United States*, 984 F.2d 1100, 1107 (10th Cir. 1993) (concluding that decisions made during a rescue and evacuation from a national park were protected by the discretionary function exception); *Johnson v. United States*, 949 F.2d 332, 339 (10th Cir. 1991) (holding the rescue decision process was protected by the discretionary function exception); *Four v. United States*, 431 F. Supp. 2d 985, 992 (D.N.D. 2006) (BIA dispatcher and patrol officers' decisions during an emergency response were protected by discretionary function exception because the decisions "implicate competing concerns of safety, cost, personnel allocation, and agency objectives). Thus, this court lacks subject matter jurisdiction over Dudley's claim that he was improperly moved after his injury.

## II.   Failure to Present Claims to the Appropriate Federal Agency

A federal district court does not have jurisdiction over a FTCA claim unless it was "first presented to the appropriate federal agency . . . within two years of when the claim accrued." *Walker v. United States*, 176 F.3d 437, 438 (8th Cir. 1999); 28 U.S.C. § 2675(a). A plaintiff's lawsuit must be dismissed if he fails to do so. *McNeil v. United Stats*, 508 U.S. 106, 113 (1993). The United States argues that Dudley failed to raise his claims regarding the use of a heating pad and access to a handicap ramp in his administrative claim with the Bureau of Prisons.

9

While an administrative charge is to be liberally construed for exhaustion of remedies purposes,"there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo,* a claim which simply was not made." *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) (internal citations omitted). Dudley filed an administrative claim with the Bureau of Prisons focusing on the response to his softball injury. See Docket 42-2, Administrative Claim. He addresses the failure to call an ambulance immediately, how long he lay on the softball field, the manner in which he was moved from the field to his quarters, and the lack of a medical housing unit. *Id.* Dudley does not mention access to a handicap ramp or the use of a heating pad. *Id.* Therefore, he failed to present these two issues to the Bureau of Prisons as required by § 2657(a) and the claims must be dismissed for lack of subject matter jurisdiction. *See Allen v. United States,* 590 F.3d 541, 544 (8th Cir. 2009) (dismissing one claim from the litigation because it was not raised in the administrative claim). Because Dudley did not include his complaints regarding the heating pad and handicap ramp in his administrative complaint, these claims must be dismissed.

**III.    Motion for the Appointment of Counsel**

Dudley also moves for the appointment of an attorney to represent him in this matter. Docket 44. He asserts he "needs a lawyer to further the allegations and collection of evidence in this case." *Id.*

There is no constitutional or statutory right to appointed counsel in civil cases. *Edgington v. Missouri Dep't of Corr.*, 52 F.3d 777, 780 (8th Cir. 1995), *abrogated on other grounds by Doe v. Cassel,* 403 F.3d 986, 989 (8th Cir. 2005). A federal district court is permitted to appoint counsel for an indigent prisoner who has pleaded a non-frivolous cause

of action. 28 U.S.C. § 1915. In determining whether to appoint counsel, a court considers

"the factual complexity of the issues, the ability of the indigent person to investigate the facts,

the existence of conflicting testimony, the ability of the indigent person to present the claims,

and the complexity of the legal arguments." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794

(8th Cir. 2006). This case is neither factually nor legally complex. Dudley has demonstrated

an ability to research the issues and clearly present his claims. Accordingly, the appointment

of counsel is not warranted in this case.

## CONCLUSION

Several of Dudley's claims fall within the discretionary function exception to the

FTCA. He also failed to present certain claims to the Bureau of Prisons in his administrative

claims. Accordingly, this court lacks jurisdiction over those claims. Dudley has also failed to

show that the appointment of counsel will benefit both him and the court. Therefore, it is:

ORDERED that the United States' partial motion to dismiss for lack of jurisdicton

(Docket 40) is granted pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that Dudley's motion to appoint counsel (Docket 44) is

denied.

Dated this _____ day of December, 2010.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, Clerk

By_____
Deputy