FILED
OCT 25 2011

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| GENE E. DUDLEY, | Civ. 09-4024-LLP |
| Plaintiff, | |
| vs. | ORDER GRANTING MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Plaintiff, Gene. E. Dudley filed the instant action against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346. Dudley was incarcerated at the Federal Prison Camp (FPC) in Yankton, South Dakota at the time relevant to this action. Dudley was injured in an inmate softball game. After granting the United States' previous motion to dismiss, the only claim that remains is Dudley's contention that a delay in getting him to the hospital for medical treatment caused him additional pain and lingering stiffness and "harmful effects" in his hip joint. Docket 1, ¶ 10a. The United States now moves for summary judgment under Rule 56 of the Federal Rules of Procedure and for dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**FACTUAL BACKGROUND**

Dudley filed an administrative tort claim on October 2, 2008, seeking damages in the amount of $350,000. The claim was denied on December 16, 2008. Dudley then timely filed this action under the FTCA as codified at 28 U.S.C. § 1346.

At the time relevant to this action, Dudley was housed at the Federal Bureau of

1

Prisons Camp at Yankton, South Dakota (FPC Yankton). On May 27, 2007, which was a holiday weekend, Dudley was injured during an inmate softball game when he jumped to catch a fly ball. Dudley suffered a fracture from the impact of hitting the ground when he landed wrong. When Dudley did not get up, BOP Recreational Officer Garza went to him, asked him questions about his condition, and then used a handheld radio to summon the shift commander, Lieutenant McElroy. Dudley is unsure how long it took Lt. McElroy to arrive at the softball field. But when she arrived, she asked Dudley questions about his condition. Lt. McElroy then had inmates ease Dudley into a motorized cart so he could be taken off the field. Dudley was driven to his housing unit where other inmates placed him in his bunk.

FPC Yankton is a Care Level 1 institution, which does not require medical personnel to be present at the institution 24 hours a day. This designation does require the institution to implement procedures in the event that medical assistance is required after hours. Health services staff are available on campus at Yankton FPC between the hours of 6 a.m. to 4 p.m., Monday through Friday, and 8 a.m. to 4 p.m. on weekends and holidays.

Steve Baker, a physician's assistant, was the medical provider on call on May 27, 2007. Lt. McElroy contacted P.A. Baker about Dudley's injury at 6:35 p.m. According to BOP records, P.A. Baker returned to the facility to examine Dudley at 8:18 p.m. P.A. Baker noted that there was no obvious fracture, no leg length discrepancy, and no abnormal posturing of Dudley's leg. Dudley was in little distress, unless he moved his right leg. P.A. Banker noted that the injured area around Dudley's hip was tender upon palpation and made a differential diagnosis of fracture versus strain versus other. After his examination, P.A. Baker concluded Dudley needed to be transported by ambulance to the local hospital for

evaluation and treatment.

An ambulance was called at around 9 p.m. and arrived at the facility at about 9:07 p.m. The ambulance crew noted no inward or outward rotation of Dudley's injured leg and that Dudley complained of pain after being moved but was better after he could relax. The ambulance arrived at the emergency room at 9:34 p.m. Emergency room staff conducted various tests to determine whether Dudley had an inflammation of the hip joint lining or if he had hip disease. X-rays showed that Dudley had a fracture of the acetabulum, which required surgical repair.[1] The surgery could not be performed at the Yankton hospital, so Dudley was transported to Avera McKennan Hospital in Sioux Falls, South Dakota. Dudley was subsequently transferred to St. Mary's Hospital in Rochester, Minnesota, due to the difficulty of the surgical repair. Following the surgery, Dudley developed progressive heterotopic ossification in his right hip.[2]

Dudley does not challenge the above facts. He does however, assert that he was housed in the unit "for over five hours to the best of [his] recollection." Docket 88 at 1. Dudley also notes that "the record indicate[s] it took the Defendant 6 days to perform surgery." *Id.* at 2. Dudley also challenges the United States' assertion that his claim regarding an overdose of Motrin or ibuprofen is not properly before this court. After reviewing

---

[1] An acetabular fracture is a fracture of the acetabulum, or the "cup-shaped depression on the external surface of the hip bone, with which the head of the femur articulates." Stedman's Medical Dictionary 11 (26th ed. 1995).

[2] Heterotopic ossification is "the presence of bone in soft tissue where bone normally does not exist." Dia Shehab, Abdelhaimid H. Elgazzard, & B. David Collier, *Heterotopic Ossification*, 43 The Journal of Nuclear Medicine 3, 346 (2002), available at http://jnm.snmjournals.org/content/43/3/346.full.pdf. "The acquired form of HO most frequently is seen with either musculoskeletal trauma, spinal cord injury, or central nervous system injury." *Id.*

3

Dudley's complaint and his deposition, the court concludes that the Motrin claim was not included in his complaint. Consequently, the claim is not properly before the court and cannot be considered at this stage in the litigation.

## STANDARD OF REVIEW

Jurisdiction is a threshold question that should be decided at the outset of litigation. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). "Plaintiffs have the burden of establishing that jurisdiction exists." *Sisseton-Wahpeton Oyate v. U.S. Dep't of State*, 659 F. Supp. 2d 1071, 1077. Because a 12(b)(1) motion challenges the court's power to hear the case, "the trial court is free to weigh the evidence and satisfy itself as to its power to hear the case." *Osborn*, 918 F.2d at 730. Therefore, the court may consider facts beyond the allegations of the complaint without converting the 12(b)(1) motion to a motion for summary judgment. *Id.*; *Deuser v. Vecera*, 139 F.3d 1190, 1192 n.3 (8th Cir. 1998).

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to

establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise show that a genuine issue exists. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

Rule 56 of the Federal Rules of Civil Procedure applies to prisoner litigants, despite the liberal construction afforded to their pro se pleadings. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522 (8th Cir. 1987). The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996).

Courts must remain sensitive, however, to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and the Eighth Circuit has explicitly disapproved of summary dismissal of prisoner pro se claims without regard for these special problems. *Nickens v. White*, 622 F.2d 967, 971 (8th Cir.1980), *cert. denied*, 449 U.S. 1018 (1980).

## DISCUSSION

The FTCA generally waives the sovereign immunity of the United States for certain torts committed by government employees. "Sovereign immunity is a jurisdictional doctrine and the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *Brown v. United States*, 151 F.3d 800, 804 (8th Cir.

1998).The scope of a waiver of sovereign immunity is also a jurisdictional question. *Id.* Thus, if a claim falls outside the FTCA's limited waiver of sovereign immunity, the claim must be dismissed under Rule 12(b)(1) for lack of jurisdiction. *See, e.g., Mader v. United States*, ___ F.3d ___, No. 09-1025, 2011 WL 3903256 at *7 (8th Cir. Sept. 7, 2011) (en banc) (affirming district court's dismissal of FTCA claim pursuant to Rule 12(b)(1) where claimant did not satisfy presentment requirement of 28 U.S.C. § 2675(a) and sovereign immunity therefore was not waived).

The FTCA allows suits against the United States for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant." 28 U.S.C. § 1346(b)(1). This doctrine is referred to as the "private liability analog." The law of the state where the alleged tort occurred defines a plaintiff's substantive tort rights under the FTCA. *Id.*; *Goodman v. United States*, 2 F3.d 291, 292 (8th Cir. 1993). Thus, the substantive law of South Dakota governs this action because Dudley's tort claim arises out of conduct that happened in South Dakota, namely the Bureau of Prison's response to Dudley's injury at the Yankton Federal Prison Camp. Under the FTCA, the federal government is liable to a plaintiff only to the same extent, and in the same manner, as a private individual would be under the circumstances. *United States v. Olson*, 546 U.S. 43, 45-46 (2005). The private liability analog affords the government immunity even where the governmental conduct at issue presents similar, but not identical circumstances to the type of immunity afforded to a private person under state law; this is because the federal government can never be exactly like a private actor. *Id.* at 45.

6

## II. BOP Staff, with the Exception of P.A. Baker, Are Entitled to Immunity under SDCL 20-9-4.1, the South Dakota Good Samaritan Statute.

The United States argues that South Dakota's Good Samaritan statute provides immunity for the Bureau of Prisons' decision that an ambulance was not immediately needed. Dudley asserts that the United States has waived this argument because it was not set forth as a defense in their answer. But Rule 12(b)(1) permits a party to assert the defense of lack of subject matter jurisdiction by motion, rather than in a responsive pleading. Because a challenge to analogous private liability is inherently a challenge to the court's jurisdiction, the United States is permitted to raise this defense via motion. Accordingly, the court will consider whether the BOP's conduct is shielded by the South Dakota Good Samaritan statute.

The State of South Dakota has granted rescuers immunity for any actions taken during a rescue when their actions are taken in good faith. The Good Samaritan statute, set forth at SDCL 20-9-4.1, provides:

> No peace officer, conservation officer, member of any fire department, police department and their first aid, rescue or emergency squad, or *any citizen acting as such as a volunteer, or any other person* is liable for any civil damages as a result of their acts of commission or omission arising out of and in the course of their rendering in good faith, any emergency care and services during an emergency which is in their judgment indicated and necessary at the time. Such relief from liability for civil damages shall extend to the operation of any motor vehicle in connection with any such care or services.

(emphasis added). Under the FTCA, "the application of the 'Good Samaritan' doctrine is at bottom a question of state law." *United States v. S.A. Empresa de Viacao Aerea Rio Grandese (Varig Airlines)*, 467 U.S. 797, 816 n.12 (1984).[3] The South Dakota Supreme Court has

---

[3] Dudley also argues that the BOP employees breached a duty of care owed to him under 18 U.S.C. §§ 4013 and 4042 and Bureau of Prisons' Program Statement 6031, Patient Care. See Docket 1, Complaint, ¶ 7 and Docket 89 at 1, 5. But these federal statutes and internal policies cannot create

7

observed that "[b]y adopting this 'Good Samaritan' statute, the South Dakota Legislature adopted the public policy of encouraging persons, and as the emphasized language indicates – not just professional persons– to act on their instinct when confronted with emergency situations." *Thompson v. Summers*, 567 N.W.2d 387, 394 n.6 (S.D. 1997). The "purpose of the statute is to encourage persons to provide emergency care or services without fear of liability." *In re: Certification of a Question of Law*, 779 N.W.2d 158, 163 (S.D. 2010). The South Dakota Supreme Court has held that the statute is so broad as to bar recovery not only by the person being rescued, but also by a third party. *Id.* at 161-63. Thus, this statute provides very broad immunity. *Id.* at 163.

Dudley claims that an ambulance should have been called immediately. But there is nothing in the evidence to raise a question of fact as to any negligence on the part of the persons at the scene of the injury at the ballfield. In addition, there is no material issue of fact as to the potential negligence of any person involved with Dudley before or after he left the ballfield and until the ambulance arrived. The situation as to Physician's Assistant Baker, will be subsequently considered. If there was a material issue of fact as to anyone other than Physician's Assistant Baker, then South Dakota's Good Samaritan immunity would apply to those persons. If there was evidence of negligence by persons after Dudley was taken to Physician's Assistant Baker, then those persons would be immune from liability pursuant to

---

a substantive cause of action under the FTCA unless the conduct at issue is "independently tortious under applicable state law." *Dalrymple v. United States*, 460 F.3d 1318, 1327 (11th Cir. 2006). *See also Klett v. Pim*, 965 F.2d 587, 589 (8th Cir. 1992) ("Federally imposed obligations, whether general or specific, are irrelevant to our inquiry under the FTCA, unless state law imposes a similar obligation on private persons.") (internal citations omitted). Thus, the BOP has no greater liability than a private person would have in responding to an injury during a softball game and would have the same immunity under state law as a private person.

the Good Samaritan statute, SDCL 20-9-4.1, as their negligence, if there were any, would not rise to the standard for denying immunity under SDCL 20-9-4.1 (gross negligence or willful or wanton misconduct). Thus, the United States' motion to dismiss is granted with respect to Dudley's claims against those persons.

But if there were negligence on the part of Physician's Assistant Baker, then he would not be entitled to immunity under SDCL 20-9-4.1, the general Good Samaritan statute. The more specific statute, SDCL 20-9-3, governs the immunity provided to physician's assistants as well as other medical providers when they render emergency care. SDCL 20-9-3 provides that:

> No physician, surgeon, osteopath, physician assistant, registered nurse, or licensed practical nurse . . . who in good faith renders, in this state, emergency care at the scene of the emergency, shall be liable for any civil damages as a result of any acts or omissions by such person rendering the emergency care.

The immunity provided by SDCL 20-9-3 is limited to "emergency care at the scene of the emergency." The general immunity statute, SDCL 20-9-4.1, applies immunity more broadly where it provides immunity for "any emergency care and services during an emergency" with the immunity not being limited to "emergency care at the scene of the emergency" as provided in SDCL 20-9-3. SDCL 20-9-3 applies specifically to a variety of medical practitioners and by its more specific terms precludes the application of SDCL 20-9-4.1, the general Good Samaritan statute, to a physician's assistant. In this case, Physician's Assistant Baker was never at the ballfield, the scene of the injury. Instead, he examined Dudley once Dudley was returned to his housing. Because Physician's Assistant Baker did not treat Dudley at the scene of his injury, he is not entitled to immunity under SDCL 20-9-3, which applies specifically to medical providers rendering services at the scene of an emergency. Thus,

9

Physician's Assistant Baker is not entitled to immunity under either statute. Accordingly, the private liability analog of the FTCA does not bar Dudley's claims against Physician's Assistant Baker.

## II.   The United States is Entitled to Summary Judgment on Dudley's Medical Treatment Claim Because he Has No Expert Medical Testimony.

Although Physician's Assistant Baker is not entitled to immunity under South Dakota law, the United States is entitled to summary judgment. Dudley claims that he was left on the softball field too long, that Physician's Assistant Baker should have returned to the institution to evaluate him sooner rather than over the phone, and that an ambulance should have been called immediately upon his injury, rather than after Physician's Assistant Baker arrived. But Dudley has failed to establish with competent medical testimony that any of these claims as to Physician's Assistant Baker, if true, exacerbated or caused him the permanent physical injury and pain he alleges. As previously discussed, those claims to the extent they apply to persons other than Physician's Assistant Baker, are barred by the South Dakota Good Samaritan statute, SDCL 20-9-4.1.

It is well-settled under South Dakota law that the plaintiff in a medical malpractice case must provide expert testimony to prove the elements of a medical malpractice claim. *See Koeniger v. Eckrich*, 422 N.W.2d 600, 601(S.D. 1988); *Magbuhat v. Kovarik*, 382 N.W.2d 43, 46 (S.D. 1986); *Block v. McVay*, 126 N.W.2d 808, 811-12 (S.D. 1964), *overruled on other grounds by Shamburger v. Behrens*, 380 N.W.2d 659 (S.D. 1986). A plaintiff must produce expert testimony as to the applicable standard of care, whether the standard of care was breached, and whether the breach of the standard of care caused his injuries. *Koeniger*, 422 N.W.2d at 606. Because Physician's Assistant Baker is a medical practitioner, not a layperson,

10

his conduct is judged by the standard of care applicable to physician's assistants. There has been no showing by Dudley of any expert testimony to establish the standard of care for a physician's assistant, nor has Dudley shown a breach of the standard of care for physician's assistants by Physician's Assistant Baker.[4] In *Goodman v. United States*, 2 F.3d 291, 292 (8th Cir. 1993), the Eighth Circuit Court of Appeals affirmed the dismissal of a medical malpractice case brought under the FTCA, finding that expert testimony was required as to the standard of care. After a court trial, the district court entered a judgment in favor of the defendant because the plaintiff's expert failed to testify as to what the standard of care was under the circumstances and facts of the case. *Id.* Dudley's claim is similarly barred by his failure to produce expert testimony. Accordingly, the United States is entitled to summary judgment.

## CONCLUSION

The South Dakota Good Samaritan statute, SDCL 20-9-4.1 provides immunity to the BOP staff who responded to Dudley's injury, transported him, and delivered him to Physician's Assistant Baker. Accordingly, the private liability analog of the FTCA bars Dudley's claims against those staff members. But the general immunity provided by SDCL 20-9-4.1 does not apply to Physician's Assistant Baker, nor is he entitled to immunity under

---

[4] This court's scheduling order, entered on February 4, 2011, and amended scheduling order, entered on May 5, 2011, required Dudley to disclose his expert and expert report by May 10, 2011. Dudley made no motion to extend that deadline. Dudley's pro se status does not excuse his failure to comply with the mandatory expert discloses required by Rule 26 of the Federal Rules of Civil Procedure. *See Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (pro se litigants are not excused from complying with substantive or procedural law); *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522 (8th Cir. 1987) (pro se litigants are required to comply with the Federal Rules of Civil Procedure and summary judgment may be entered against them).

SDCL 20-9-3. Thus, Dudley's claims predicated on Physician's Assistant Baker's conduct are not barred by the private liability analog and the United States' motion to dismiss for lack of jurisdiction is granted in part and denied in part. The United States is entitled to summary judgment on Dudley's claims arising from Physician's Assistant Baker's conduct because Dudley has failed to produce expert medical testimony, which is required under South Dakota law to prove a medical malpractice claim. Accordingly, it is

ORDERED that the United States' motion to dismiss (Docket 83) is granted in part and denied in part pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that the United States' motion for summary judgment (Docket 83) is granted pursuant to Rule 56 of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that Dudley's motion requesting assistance to depose witnesses (Docket 80) is denied as moot.

Dated this 25 day of October, 2011.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Summer Wah[?]
DEPUTY